UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| KIMERLY DENT,<br><br>     Plaintiff,<br><br>  -against-<br><br>NEW YORK CITY DEPARTMENT OF EDUCATION; THOMAS MCBRYDE, former Superintendent of Community School District 19; RONALD JAMES, Principal of PS 202 in Community School District 19; TIFFANY RICHARDS, former Assistant Principal of PS 202 in Community School District 19;<br><br>     Defendants | **COMPLAINT**<br><br>**ECF CASE**<br><br>22 Civ. _____<br><br>**JURY TRIAL DEMANDED** |

   Plaintiff KIMERLY DENT, by her attorneys, GLASS HARLOW & HOGROGIAN LLP, as and for her Complaint against Defendants, respectfully allege as follows:

## PRELIMINARY STATEMENT

   1.  Plaintiff brings this action seeking monetary and equitable relief based upon Defendants' violations of her due process rights under 42 U.S.C. Section 1983, the Rehabilitation Act for advocating on behalf of her special education students, Title VII of the Civil Rights Act of 1964 (based on race), the Americans with Disabilities Act (ADA), New York State Civil Service Law Section 75-b, and state and city anti-discrimination and anti-retaliation laws.

   2.  Plaintiff seeks economic, compensatory damages and punitive damages to the extent allowable by law, and other appropriate legal and equitable relief pursuant to federal and state and city laws.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. § 1331 as this matter involves federal questions.

4.      This action's venue properly lies in the United States District Court for the Eastern District of New York, pursuant to 28 U.S.C. § 1391, because Plaintiff is employed as a teacher for the New York City Department of Education in Brooklyn, New York.

5.      This Court has the authority to issue declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

6.      This Court has supplemental jurisdiction over Plaintiff's state and city law claims under 28 U.S.C. § 1367(a).

## PARTIES

7.      Plaintiff Kimerly Dent is a resident of the County of Queens and the State of New York.

8.      At all times relevant herein, Plaintiff was a "public employee" of Defendant New York City Department of Education within the meaning of New York State Civil Service Law § 75-b(1)(b).

9.      At all times relevant herein, Defendant New York City Department of Education ("NYCDOE") is a city school district established under the laws of the State of New York and was Ms. Dent's employer.

10.     At all times relevant herein, Defendant Thomas McBryde was the Community School District Superintendent within District 19 in Brooklyn.  He is sued in both his official and individual capacity.

11.     At all times relevant herein, Defendant Ronald James is the principal of PS 202 within District 19 in Brooklyn. He is sued in both his official and individual capacity.

12.     At all times relevant herein, Defendant Tiffany Richards was an Assistant Principal of PS 202 within District 19 in Brooklyn. Upon information and belief, she is presently a special education teacher. She is sued in both her official and individual capacity.


## STATEMENT OF FACTS

**Background prior to the 2017-18 School Year**

13.     Ms. Dent began her career at the New York City Department of Education ("NYCDOE") as a paraprofessional in September 1991. Ms. Dent was an educational assistant for a total of 24 years, starting her paraprofessional career at Public School ("PS") 273.

14.     On or about March 15, 2015, Ms. Dent was hired as a Special Education Teacher at PS 202 in Brooklyn under the supervision and leadership of Principal Machael Spencer-Edwards.

15.     Ms. Dent taught third grade in a Self-Contained Classroom from March 2015 to June 2015. A Self-Contained Classroom gives students with disabilities specialized interventions and support. The classroom consists of no more than twelve students with a lead teacher and one or more paraprofessionals who provide assistance. Ms. Dent taught first grade in an Integrated Co-Teaching (ICT) classroom during the 2015-16 school year. In an ICT classroom, a General

Education licensed teacher works side by side with a Special Education licensed teacher to teach both General Education students and students with Individualized Education Plans (IEPs). Ms. Dent then taught second grade in a Self-Contained Classroom during the 2016-17 school year; Pre-Kindergarten in an ICT classroom during the 2017-18 and 2018-19 school years; and first grade in an ICT classroom during the 2019-20 school year and the 2020-21 school year.

16.     For over 29 years, Ms. Dent received exclusively "Effective" and "Satisfactory" end-of-year ratings. Ms. Dent never received a disciplinary letter or adverse ratings as an educator or paraprofessional. All of her Annual Professional Performance Reviews ("APPR") from 2015 going forward were rated "Effective".

17.     Ms. Dent suffers from underlying medical conditions of essential hypertension and chronic obstructive pulmonary disease ("COPD"), and informed her employer of her disability in July 2020. Starting in 2020, Ms. Dent also suffered from anxiety related disability and discussed her medical condition with her employer between September 2020 and January 2021, until she was discontinued.

**Background - Extensions of Ms. Dent's probationary period and tenure by estoppel**

18.      In 2017, Ms. Dent's former principal, Principal Edwards, missed the deadline to approve five teachers to receive tenure. Principal Edwards was then removed as principal, and Ms. Dent's tenure binder was never sent to the district superintendent for review. Ms. Mason was assigned as the new principal and left in June 2017.

19.     Defendant Ronald James ("Principal James") was appointed as the new principal of PS 202 in September 2017. Defendant Tiffany Richards ("Assistant Principal Richards" or "AP

4

Richards") was employed as an assistant principal at PS 202 from August 2019 until September 2021.

20.    When Ms. Dent's tenure was again up for review in March 2018 while teaching Pre-K, she gave Principal James her tenure binder. Her tenure binder contained evidence of her effective practice from 2015 to 2017, including previous ratings of "Effective" and "Highly Effective" work under the guidance of several administrators, and in Pre-K for that current school year. However, Principal James claimed that Ms. Dent's tenure binder was not sufficient and refused to take into account her ratings and effective teaching practices prior to his arrival at PS 202. Principal James also stated that Ms. Dent's binder should contain two consecutive years of same grade work and that he would place Ms. Dent in Pre-K the next school year.   Outside her control, Ms. Dent was assigned to teach several different grade levels from the start of her teaching career.

21.    As a result, Principal James directed Ms. Dent to sign an Extension of Probation Agreement for the 2018-19 school year.

22.    In following Principal James' directives, Ms. Dent discarded all non Pre-K evidence from her tenure binder and redid her entire binder to reflect only Pre-K evidence from 2017-18 and 2018-19, including the "Satisfactory" rating that Principal James gave her for her end-of-year rating for the 2017-18 school year.

23.    In March 2019, Principal James, however, refused to submit Ms. Dent's tenure binder to the superintendent, falsely claiming he was not able to submit a "Satisfactory" (S) rating to the superintendent, despite being aware that early childhood teachers are rated with

"Satisfactory" or "Unsatisfactory" ratings, and not pursuant to the Danielson rubric where teachers are rated either Ineffective, Developing, Effective or Highly Effective.

24.     As an untenured teacher, and fearful of losing her job, Ms. Dent had no choice but to sign another Extension of Probation Agreement for the 2019-20 school year in June 2019. In relevant part, this Agreement states that "No later than 03/15/2020, KIMERLY DENT shall either be granted completion of probation, denied completion of probation and/or discontinued prior thereto; or granted an additional extension of probation".

25.     As of March 15, 2020, the expiration date of her probationary period, Ms. Dent was not notified of the status of her probation, nor did she sign another extension of probation agreement.

26.     Ms. Dent continued her teaching duties for NYCDOE after March 15, 2020. As such, Ms. Dent had acquired tenure by estoppel and could not be terminated without a New York State Education Law Section 3020-a due process hearing.

**2019-20 School Year**

27.     On July 20, 2020, Ms. Dent emailed Principal James regarding her health situation related to her hypertension and to submit a medical accommodation request to work remotely for the following school year.

28.     In August of 2020, the NYCDOE granted Ms. Dent a reasonable accommodation request to work remotely because of her underlying medical condition relating to hypertension and COPD.

29.     On August 24, 2020, Ms. Dent was named as a comparator in a former coworker Moshe Kuperman's federal lawsuit against Principal James, as well as Mr. Kuperman's SDHR complaint which precipitated and preceded the federal lawsuit. Specifically, her co-worker Moshe Kuperman stated that Ms. Dent was treated preferentially because she is African-American compared to him, who had been discontinued.

30.     Upon information and belief of Ms. Dent, after she was identified in Mr. Kuperman's lawsuit because of her protected status as an African-American individual, Principal James targeted her, as well as her colleague Rosemarie Milligan-Worrie, to have them removed from the school, and to protect himself against the allegations in Mr. Kuperman's lawsuit.

31.     On or about September 27, 2020, Principal James changed Ms. Dent's schedule from a fully remote Integrated Co-Teaching ("ICT") class to a regular education class, fully aware that some students had an Individualized Educational Plan ("IEP") mandating that they be taught in a small setting. The class roster that was given to Ms. Dent contained both general education students and students with special needs, and included two separate rosters where the original teacher names were crossed out and replaced with Ms. Dent's name. A total of 24 students were on the class roster.

32.     NYCDOE guidelines require that in an ICT setting, a General Education licensed teacher works side by side with a Special Education licensed teacher. Both teachers plan the lesson and the Special Education teacher amends the lesson according to the needs of students with Individualized Education Plans (IEPs). Because Ms. Dent was the only licensed teacher for the class, she was required to plan and teach both General Education students and Students with IEPs.

33.     Accordingly, upon information and belief of Ms. Dent, Principal James willfully placed Ms. Dent in an ICT class setting which violated federal and DOE guidelines, since the class had both General Education students and students with disabilities and did not have two licensed teachers. In September 2020, Ms. Dent sent an email to both Principal James and Assistant Principal Richards concerning the need for placement of another teacher for this ICT class. Her requests to her administration went unanswered.

34.     The following day, on or about September 28, 2020, Ms. Dent informed her UFT Chapter leader, Ms. Shepherd, concerning the non-compliance of her ICT class with special education mandates.  The UFT chapter leader Ms. Shepherd emailed Principal James and AP Richards, informing them that if Ms. Dent's class did not have a teacher by the end of the week, she would encourage Ms. Dent to file a special complaint.

35.     On September 30, 2020, Ms. Dent received a letter from Principal James stating that someone will be supporting her remote class full-time. Ms. Dent understood this to mean that there would be another licensed teacher to assist with teacher duties such as: preparing lessons, setting zoom meetings, teaching lessons, preparing and uploading assignments, grading assignments, keeping/tracking data, taking attendance, calling and emailing parents daily. Ms. Dent requested a licensed teacher to help her with lesson planning in order for her to focus on the goals for students with disabilities, since she was the licensed Special Education teacher for the class.

36.     Subsequently, however, Principal James instructed Ms. Dent that the new substitute teacher, Evelyn Stewart, "will not do lesson plans because substitute teachers do not do lesson

plans." In addition, Ms. Stewart was never full-time and was constantly called upon to cover classrooms while teachers took their lunch and during instructional periods to do Covid testing.

37.     As a result of this lack of support and non-compliance with IEP mandates, Ms. Dent was charged with providing the education of twenty-plus students where at least five of them had Individualized Education Plans (IEPs) that mandated a special setting and individualized instruction. Ms. Dent's daily responsibilities included daily instruction in content areas, providing and uploading supplemental learning material, checking classwork and homework daily, keeping extensive data on students' growth, daily calls and emails to parents, and dealing with daily issues of parents reporting Ipads not working or not in receipt. Ms. Dent also had to redo her schedule to provide individualized instruction to meet the needs of students with IEPs. This work was not only done during the school day, but Ms. Dent scheduled sessions at 4:30 pm after school hours to meet their needs. Additionally, Ms. Dent was responsible for guided reading testing of all students. Testing took more time than usual as students continuously had issues with their DOE devices, or they missed their scheduled time slot and had to be rescheduled. Ms. Dent notified Principal James that she and her classroom paraprofessional, Ms. Gonzalez, revamped the schedule in order to conduct guided reading groups weekly. Principal James never responded to Ms. Dent's notice. The substitute teacher was not trained to conduct guided reading groups, nor was she apprised of the curriculum.

38.     On or about November 13, 2020, Ms. Dent discovered that the students with disabilities that were on the initial roster given to her were not on her official roster in the "Stars" report card system. The school's pupil secretary confirmed to Ms. Dent that there were no students with IEPs on her roster since students with IEPs would be coded as 119 and Ms. Dent's roster

contained no such coding. Ms. Dent reached out to both Principal James and AP Richards on three separate occasions. Defendants never responded.

39.     On or about October 2, 2020, Ms. Dent filed a special education complaint regarding the ICT violation against the school administration through her union UFT.

40.     After Ms. Dent requested medical accommodations, reported the non-compliance with IEP mandates and filed her special education complaint, Principal James began a pattern of retaliatory behavior towards her. He put Ms. Dent in a position to fail by demanding that the ICT co-teaching model not be implemented with the substitute teacher.  Furthermore, Ms. Dent was intentionally ignored and harassed by her administrators, as important questions went unanswered, plans awaiting administration's approval never got a response, and invitations to parent workshops she conducted never got a response.

41.     Ms. Dent also received approximately five unannounced visits to her virtual classroom from her supervisors Principal James and AP Richards. On one such occasion, on or about November 2020, AP Richards joined her Zoom meeting, laughed during the lesson, and made fun of Ms. Dent's inability to share the Zoom screen. Ms. Dent was not the only teacher to have difficulty with technology, yet she was the only one being mocked for it. Principal James also visited her classroom four times during the 2020-21 school year during remote instruction but only gave her feedback on two visits.

42.     As a result, Ms. Dent's anxiety and stress became unbearable. The situation at her school exacerbated her medical conditions. She started to experience insomnia, loss of appetite, and panic attacks with heart palpitations and shortness of breath. In or about late November 2020, her doctor, Dr. Neal Gupta, prescribed anxiety medicine.

43.     On November 19, 2020, Ms. Dent's request for reasonable accommodation to work remotely due to increased risk for severe illness from Covid-19 was extended until June 30, 2021.

44.     On December 8, 2020, AP Richards held a "wellness check" meeting with Ms. Dent via Zoom. During this meeting, Ms. Dent discussed her anxiety and the stress she was experiencing this school year. She also mentioned her overwhelming workload, and her issues with Zoom. In response, AP Richards only suggested to Ms. Dent to find time to co-plan, which was impossible during the day considering the daily schedule.

45.     Although Ms. Dent expressed on numerous occasions her anxiety issues, Principal James and AP Richards contributed to exacerbating her health condition rather than accommodating her disability by ignoring her communications and visiting her virtual classrooms all the time. For instance, shortly after Ms. Dent discussed with AP Richards her anxiety when administrators came into her zoom sessions, Principal James observed Ms. Dent's remote classroom on January 5, 2021, and gave her only negative feedback that did not reflect her actual teaching performance.

46.     On December 16, 2020, Ms. Dent reached out to Principal James alerting him that she was blocked by administration from accessing certain online applications that would ease the difficulties she was experiencing with technology and sharing her screen. Principal James did not address the issue.

47.     On December 17, 2020, during a team inquiry meeting, Ms. Dent learned that AP Richards gave her different directives from the other first grade teachers concerning planning for Math lessons. Ms. Dent had to break down her lessons into two days, while the other first grade teachers were doing one Math lesson per day.

48.     Principal James and his administration have targeted multiple employees at PS 202, who have filed complaints against him, who have faced termination, involuntary leave, excessed, and misconduct reports due to discriminatory and retaliatory motives because employees filed grievances, safety reports, special education violations, EEOC charges, and NYSDHR complaints.

**Discontinuance**

49.     Upon information and belief of Ms. Dent, superintendents and principals have conversations about probationary teachers to determine whether tenure should be granted or denied.

50.     Upon information and belief of Ms. Dent, Superintendent McBryde and Principal James had conversations and communications in regards to Ms. Dent's tenure status and/or discontinuance.

51.     By letter emailed to her on January 15, 2021, Ms. Dent received a notice of discontinuance from Principal James that she would be terminated as a probationary teacher effective March 16, 2021.  Principal James did not include any reason for her termination and Ms. Dent never received any documentation related to her discontinuance.

52.     Upon information and belief of Ms. Dent, Superintendent McBryde knowingly chose to discontinue Ms. Dent based on Principal James' retaliatory and discriminatory behavior. Moreover, Superintendent McBryde did not provide Ms. Dent with an opportunity to submit a rebuttal or statement prior to her discontinuance.

53.     Ms. Dent should not have been discontinued as a probationary teacher, because she actually had previously earned tenure by estoppel on March 15, 2020, and could not have been terminated without a Section 3020-a tenure hearing.  In a similar case, her colleague, Ms. Milligan-

12

Worrie, was similarly discontinued after she accrued tenure by estoppel, and subsequently was reinstated as a tenured teacher after her discontinuance, following Article 78 litigation.

54.     Other teachers who never reported special education violations were given preferential treatment, additional supplies and resources, and were granted tenure. For instance, Ms. Catlin, a Special Education teacher who began her career around the same time as Ms. Dent, never reported special education violations and received tenure. Ms. Alexander, a Special Education Teacher who arrived at PS 202 after Ms. Dent, never spoke up about special education violations although she taught an ICT class alone, and was granted tenure.

55.     On January 18, 2021, during her daily teaching instruction, Ms. Dent experienced an acute pain in her chest, which was stress related because of the discrimination and retaliation she was subjected to. Ms. Dent went to urgent care because her primary doctor was unavailable. On January 20, 2021, Ms. Dent followed up with her doctor who recommended her to take a leave of absence from work.

56.     On January 25, 2021, during a monthly staff meeting, Principal James mocked other colleagues' mental illness and anxiety, suggesting he was referring to Ms. Dent while she was on medical leave in a derogatory fashion. Notably, Mr. James stated "those of you with anxiety will get over it". A colleague contacted Ms. Dent after the meeting and alerted her that Principal James was making discriminatory remarks about her disability with her colleagues during private and team meetings.

57.     On January 26, 2021, Ms. Dent submitted a Restoration of Health Leave Application with the NYCDOE, which was approved from January 22, 2021 to March 16, 2021. During this time, Ms. Dent waited for the NYCDOE to respond to the appeal of her discontinuance.

58.     Ms. Dent was officially discontinued from her teaching employment on March 16, 2021, and was not even allowed to revert to a paraprofessional position.

**EEOC charge and further retaliation**

59.     On January 11, 2022, Ms. Dent filed an EEOC charge against Principal James, Former Superintendent Thomas McBryde and the NYCDOE for discrimination, harassment, disparate treatment, retaliation against her for filing a special education complaint, mocking her of her disability, and being named in a federal case.

60.     In January 2022, Ms. Dent applied for a job with NYCDOE as a test scorer. She was denied eligibility due to her status of being "discontinued".  Ms. Dent had to withdraw funds from the Teacher's Retirement System after depleting her savings and checking accounts to consolidate her debts.

61.     On January 24, 2022, Ms. Dent submitted an application for unemployment.

62.     On March 10, 2022, while inquiring with the NYS Department of Labor (DOL) about the status of her unemployment benefits application, Ms. Dent was informed by a DOL representative that Principal James falsely stated to the DOL that she was terminated because she violated company policy, thereby delaying receipt of unemployment funds while an investigation was underway regarding her benefits.

63.     Upon information and belief, Ms. Dent believes that in retaliation for filing her EEOC charge against him, Principal James provided wrong information on her unemployment application in an attempt to have benefits not awarded to her.

64.     On March 20, 2022, Ms. Dent filed a notice of claim against Defendants.

65.     Ms. Dent requested and received an EEOC right to sue letter, dated June 21, 2022, a copy of which is annexed hereto as Exhibit A.

66.     Based on the above, Ms. Dent is currently an unemployed teacher with loss of income, medical, dental, and prescription benefits. She had to withdraw money from her pensionable earnings to support her family. The events from September 2020 to the present have taken a tremendous toll on Ms. Dent's physical, emotional and mental health.

**FIRST CLAIM FOR RELIEF**
**DEPRIVATION OF PROCEDURAL DUE PROCESS IN VIOLATION OF 42 U.S.C.**
**SECTION 1983**
**(AGAINST ALL DEFENDANTS)**

67.     Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs, as if fully set forth herein.

68.     Defendants accepted the continued services of Plaintiff, but failed to take the action required by law to either grant or deny tenure prior to the expiration of Plaintiff's probationary term. As such, Plaintiff acquired tenure by estoppel.

69.     Tenured teachers have a protected property interest in continued employment.

70.     Superintendent McBryde, by letter dated January 15, 2021, unlawfully terminated Plaintiff's employment as a probationer when she should have earned tenure. At that time, Plaintiff had accrued tenure by estoppel as of March 15, 2020, when her extension of probation agreement expired.

71.     Defendants violated Plaintiff's due process rights by terminating her as a putative probationary employee, and without a hearing required by Education Law § 3020 and  § 3020-a for tenured employees, when in fact she had tenure by estoppel.  *See Milligan-Worrie v. NYCDOE,*

Index No. 151978/2021 (Sup. Ct. N.Y. Co. 2022). In addition, Defendants violated her due process rights by failing to revert her to a paraprofessional status at the time of the termination.

72.     As a proximate result of Defendants' actions against Plaintiff, she has suffered and continues to suffer a loss of monetary damages, humiliation, severe emotional distress, mental and physical anguish and suffering, and damage to her professional reputation, in an amount to be determined at trial.

## SECOND CLAIM FOR RELIEF
## DISCRIMINATION/RETALIATION IN VIOLATION OF TITLE VII
### (AGAINST DEFENDANT NYCDOE)

73.     Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs, as if fully set forth herein.

74.     Plaintiff was named as a comparator in a lawsuit because she is African-American. Specifically, her co-worker Moshe Kuperman stated that she was treated preferentially because she is African-American and he was discontinued based on his race at the same time Ms. Dent's probation was extended.

75.     Her status as an African-American individual is a protected category.

76.     Defendants targeted Plaintiff solely because of her inclusion in Mr. Kuperman's lawsuit.

77.     As Plaintiff's inclusion in Mr. Kuperman's lawsuit only because of her protected status as an African-American individual, *ipso facto* Defendants targeted her because of her status as an African-American individual.

78.      As a result, Plaintiff suffered damages in an amount to be determined at trial.

### THIRD CLAIM FOR RELIEF
### RETALIATION IN VIOLATION OF THE REHABILITATION ACT
### (AGAINST DEFENDANT NYCDOE)

79.     Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs, as if fully set forth herein.

80.     Section 504 of the Rehabilitation Act requires school districts to provide regular or special education and related aids and services so that the educational needs of disabled students are met as adequately as non-disabled students.

81.     Plaintiff complained on behalf of her students with special needs in the classroom, including making complaints about inadequate ICT staffing against the school administration in violation of the IDEA, and was subsequently discontinued for it.

82.     Because of Plaintiff's complaints, Defendants retaliated against Plaintiff.

83.     As a result, Plaintiff suffered damages in an amount to be determined at trial.

### FOURTH CLAIM FOR RELIEF
### DISCRIMINATION, HOSTILE WORK ENVIRONMENT AND RETALIATION IN
### VIOLATION OF THE ADA
### (AGAINST NYCDOE)

84.     Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs, as if fully set forth herein.

85.     Plaintiff suffers from underlying medical conditions of essential hypertension and chronic obstructive pulmonary disease ("COPD"), and informed Defendants of her disability in July 2020.

86.     Starting in 2020, Plaintiff also suffered from anxiety related disability and discussed her medical condition with Defendants between September 2020 and January 2021, until her employment was discontinued.

87.     Plaintiff was regarded as disabled by her employer and identified as an ADA-qualifying disability employee. Her mental health diagnosis is protected activity under the ADA.

88.     Plaintiff has been discriminated and retaliated against based on her disability based on hypertension, by being subject to a hostile work environment, including Defendants assigning her an overwhelming workload, demanding that the ICT co-teaching model not be implemented with the substitute teacher, and intentionally ignoring her.

89.     After Plaintiff disclosed her anxiety issues to Defendants, Defendants exacerbated her health condition rather than accommodating her disability by ignoring her communications, harassing her with numerous unannounced visits to her virtual classroom, giving her negative feedback that did not reflect her actual performances, making discriminatory remarks about her disability with her colleagues during private and team meetings, and ultimately terminating her employment.

90.     Plaintiff was further retaliated against for filing her EEOC complaint when administration disputed her unemployment benefits claim.

91.     As a result, Plaintiff suffered damages in an amount to be determined at trial.

**FIFTH CLAIM FOR RELIEF**
**NYS HUMAN RIGHTS LAW (RACE DISCRIMINATION)**
**(AGAINST DEFENDANTS MCBRYDE, JAMES AND RICHARDS)**

92.     Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs, as if fully set forth herein.

93.     Plaintiff was named as a comparator in a lawsuit because she is African-American. Specifically, her co-worker Moshe Kuperman alleged in his federal complaint and SDHR complaint that she was treated preferentially because she is African-American.

94.     Her status as an African-American individual is a protected category.

95.     Defendants targeted Plaintiff solely because of her inclusion in Mr. Kuperman's lawsuit.

96.     As Plaintiff's inclusion in Mr. Kuperman's lawsuit only because of her protected status as an African-American individual, ipso facto Defendants targeted her because of her status as an African-American individual.

97.      As a result, Plaintiff suffered damages in an amount to be determined at trial.

**SIXTH CLAIM FOR RELIEF**
**NYS HUMAN RIGHTS LAW (DISABILITY DISCRIMINATION)**
**(AGAINST DEFENDANTS MCBRYDE, JAMES AND RICHARDS)**

98.     Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs, as if fully set forth herein.

99.     The NYSHRL makes it unlawful to retaliate against any individual on the basis of disability.

100.     Plaintiff suffers from underlying medical conditions of essential hypertension and chronic obstructive pulmonary disease ("COPD"), and informed Defendants of her disability in July 2020.

101.     Starting 2020, Plaintiff also suffered from anxiety related disability and discussed her medical condition with Defendants between September 2020 and January 2021, until she was discontinued.

102.     Plaintiff has been discriminated and retaliated against based on her disability based on hypertension, by being subject to a hostile work environment, including Defendants assigning her an overwhelming workload, demanding that the ICT co-teaching model not be implemented with the substitute teacher, and intentionally ignoring her.

103.     After Plaintiff disclosed her anxiety issues to Defendants, Defendants exacerbated her health condition rather than accommodating her disability by ignoring her communications, harassing her with numerous unannounced visits to her virtual classroom, giving her negative feedback that did not reflect her actual performances, making discriminatory remarks about her disability with her colleagues during private and team meetings, and ultimately terminating her employment.

104.     As a result, Plaintiff suffered damages in an amount to be determined at trial.


**SEVENTH CLAIM FOR RELIEF**
**NYC HUMAN RIGHTS LAW (RACE DISCRIMINATION)**
**(AGAINST DEFENDANTS MCBRYDE, JAMES AND RICHARDS)**

105.     Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs, as if fully set forth herein.

106.     Plaintiff was named as a comparator in a lawsuit because she is African-American. Specifically, her co-worker Moshe Kuperman stated that she was treated preferentially because she is African-American.

107.     Her status as an African-American individual is a protected category.

108.     Defendants targeted Plaintiff solely because of her inclusion in Mr. Kuperman's lawsuit.

109.     As Plaintiff's inclusion in Mr. Kuperman's lawsuit only because of her protected status as an African-American individual, *ipso facto* Defendants targeted her because of her status as an African-American individual.

110.      As a result, Plaintiff suffered damages in an amount to be determined at trial.

**EIGHTH CLAIM FOR RELIEF**
**NYC HUMAN RIGHTS LAW (DISABILITY DISCRIMINATION)**
**(AGAINST DEFENDANTS MCBRYDE, JAMES AND RICHARDS)**

111.     Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs, as if fully set forth herein.

112.     The NYCHRL makes it unlawful to retaliate against any individual on the basis of disability.

113.     Plaintiff suffers from underlying medical conditions of essential hypertension and chronic obstructive pulmonary disease ("COPD"), and informed Defendants of her disability in July 2020.

114.     Starting 2020, Plaintiff also suffered from anxiety related disability and discussed her medical condition with Defendants between September 2020 and January 2021, until she was discontinued.

115.     Plaintiff has been discriminated and retaliated against based on her disability based on hypertension, by being subject to a hostile work environment, including Defendants assigning her an overwhelming workload, demanding that the ICT co-teaching model not be implemented with the substitute teacher, and intentionally ignoring her.

116.     After Plaintiff disclosed her anxiety issues to Defendants, Defendants exacerbated her health condition rather than accommodating her disability by ignoring her communications, harassing her with numerous unannounced visits to her virtual classroom, giving her negative feedback that did not reflect her actual performances, making discriminatory remarks about her disability with her colleagues during private and team meetings, and ultimately terminating her employment.

117.     As a result, Plaintiff suffered damages in an amount to be determined at trial.

**NINTH CLAIM FOR RELIEF**
**<u>NYS HUMAN RIGHTS LAW (RETALIATION FOR EEOC FILING)</u>**
**(AGAINST ALL DEFENDANTS)**

118.     Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs, as if fully set forth herein.

119.     Plaintiff filed her EEOC complaint on January 11, 2022.

120.     Plaintiff was retaliated against for filing her EEOC complaint by Defendants by disputing her unemployment benefits claim.

121.    Plaintiff filed a notice of claim on March 20, 2022.


**TENTH CLAIM FOR RELIEF**
**NYC HUMAN RIGHTS LAW (RETALIATION FOR EEOC FILING)**
**(AGAINST ALL DEFENDANTS)**

122.    Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs, as if fully set forth herein.

123.    Plaintiff filed her EEOC complaint on January 11, 2022.

124.    Plaintiff was retaliated against for filing her EEOC complaint by Defendants by disputing her unemployment benefits claim.

125.    Plaintiff filed a notice of claim on March 20, 2022.


**JURY DEMAND**

Plaintiffs hereby demand a trial by Jury.


**PRAYER/DEMAND FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment in her favor against Defendants as follows:

A.    A declaratory judgment that Defendant NYCDOE is in violation of 42 U.S.C. Section 1983;

B.    A declaratory judgment that Defendant NYCDOE is in violation of the federal Rehabilitation Act;

C.      A declaratory judgment that Defendant NYCDOE is in violation of federal ADA;

D.      A declaratory judgment that Defendant NYCDOE is in violation of federal Title VII.

E.      A declaratory judgment that Defendants are in violation of the New York State Human Rights Law;

F.      A declaratory judgment that Defendants are in violation of the New York City Human Rights Law;

G.      Awarding Plaintiff compensatory damages (including but not limited to emotional distress damages) and punitive damages (to the extent available) pursuant to the ADA, Title VII, the New York State Human Rights Law and New York City Human Rights Law;

H.      Awarding Plaintiff costs and reasonable attorneys' fees; and

I.      Such other and further relief as to this Court may deem necessary, just, and proper.

DATED:      New York, New York
            September 8, 2022

                        GLASS HARLOW & HOGROGIAN LLP
                        85 Broad Street, 16th Floor @ WeWork
                        New York, NY 10004
                        (212) 537-6859

                        By:      _s/ Bryan Glass_____
                                 BRYAN GLASS, ESQ.